UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

JAMES A. ELLIS, et al.,  )
                                              )
     Plaintiff,                     )         Civil No. 12-140-ART
                                              )
v.                                                 )
                                              )        **MEMORANDUM OPINION**
ARROWOOD INDEMNITY COMPANY,    )               **& ORDER**
                                              )
     Defendant.                 )
                                              )

\*\*\*  \*\*\*  \*\*\*  \*\*\*

When a Kentucky judicial commission concluded that Judge Joseph F. Bamberger had engaged in unethical behavior while on the bench, its decision set in motion an unintended cascade of events. Among the casualties was a settlement agreement between plaintiffs James A. Ellis and his architecture firm (collectively, the "Ellis Parties") and two law firms that once represented them. Eight years later, a resolution remains elusive for the parties, now joined by defendant Arrowood Indemnity Company ("Arrowood"). Seeking to bring matters to a close, the Ellis Parties and Arrowood have filed cross-motions for summary judgment. For the reasons discussed below, the Court will grant the Ellis Parties' motion and deny Arrowood's motion.

**BACKGROUND**

The story begins with a malpractice claim. The Ellis Parties sued two law firms, seeking money damages for their failure to pursue various causes of action. *Ellis v. Caudill*, No. 2006-SC-660, 2007 WL 1790397, at \*1 (Ky. June 21, 2007). The presiding state court judge, Judge Bamberger, divided the case into two phases, holding a jury trial over the issue

of damages first. *Id.* The jury found that if the case had been litigated, the Ellis Parties could have achieved a verdict of at least three million dollars. *Id.* Soon thereafter, the defendants moved for a new trial, citing evidence that Judge Bamberger and the Ellis Parties' trial consultant had an impermissibly close relationship. *Id.* Judge Bamberger recused himself, and the parties eventually settled all matters and signed a written agreement (the "Settlement Agreement"). *Id.* at 2. Arrowood's predecessor distributed $3.965 million (the "settlement funds") to the Ellis Parties pursuant to the Settlement Agreement. *Id.*; *see* R. 81-3. But new and even more damning evidence of a business relationship between Judge Bamberger and the trial consultant soon emerged. *Ellis*, 2007 WL 1790397, at *2. A new judge, Judge John David Caudill, took over, and in 2006 he set aside the Settlement Agreement to protect the integrity of the judicial process. *Id.*; R. 81-5. The court ordered the parties to participate in mediation, R. 81-5; *see* R. 82-11, to no avail. Eventually, in 2012, the Ellis Parties and the law firms finally reported that they had reached some sort of settlement. R. 81-9. Arrowood and the Ellis Parties dispute the terms of this settlement.

In late 2012, citing Arrowood's alleged refusal to permit the parties to reach a settlement, the Ellis Parties sued Arrowood for bad faith and deceptive trade practices in violation of the Kentucky Unfair Claims Settlement Practices Act ("UCSPA"). R. 1-1 at 7–9. After removing the case to federal court on diversity grounds, R. 1, Arrowood eventually filed two counterclaims, R. 8; R. 28. In its first counterclaim for restitution, Arrowood alleges that the Ellis Parties never returned the settlement funds—despite having no legal right to the funds after Judge Caudill set aside the Settlement Agreement. R. 28 at 12. Arrowood also argues that the parties never subsequently reached a settlement that would

2

entitle the Ellis Parties to retain the funds. *Id.* at 12–13. Arrowood's second counterclaim is for breach of contract, based on the same facts. *Id.* at 13–15.

## DISCUSSION

After completing the bulk of discovery, the parties filed cross-motions for summary judgment. R. 81; R. 82. Arrowood moved for summary judgment on the merits of its counterclaims and the Ellis Parties' bad faith claims. R. 81-1. The Ellis Parties, for their part, proposed three grounds for summary judgment on Arrowood's counterclaims: Kentucky's applicable statutes of limitations, the doctrine of laches, and Arrowood's lack of standing to file its counterclaims. R. 82-1 at 9. The motions present highly interrelated arguments; for example, the substance of the Ellis Parties' motion for summary judgment also appears in their response to Arrowood's motion for summary judgment. For this reason, the Court will consider both motions simultaneously.

**I.    Judge Caudill's Order Held that the Settlement Agreement Was Void *Ab Initio*.**

The outcome of several of the parties' grounds for summary judgment hinges on one key question: What was the legal effect of Judge Caudill's decision to set aside the Settlement Agreement? The state court's order contains little explanation. It says only that "the integrity of the judicial process requires that [the] dismissal order be vacated, that the settlement agreement [be] set aside, and that the jury verdict reached in November 2004 be set aside." R. 82-11 at 3. The puzzle is, essentially, whether Judge Caudill declared the contract void *ab initio* or merely terminated a valid contract when he "set aside" the Settlement Agreement. Kentucky precedent indicates that Judge Caudill's order had the former effect.

The Court has not uncovered a clear statement by the Kentucky courts of the legal consequences of "setting aside" a settlement agreement. An investigation of Kentucky case law shows that setting aside a settlement agreement is extremely rare, except in the realms of family law and workers' compensation.[1] In those fields, the Kentucky courts appear to use the term to describe the act of throwing out a settlement agreement because no true meeting of the minds ever occurred—essentially a finding that the settlement agreement was void from the outset. *E.g.*, *Kendrick v. Bailey Vault Co., Inc.*, 944 S.W.2d 147, 150 (Ky. Ct. App. 1997) (setting aside a settlement agreement due to mutual mistake or constructive fraud). Of course, family law and workers' compensation are governed by specialized statutory schemes, which affect how Kentucky courts treat settlement agreements in those contexts. *See, e.g.*, Ky. Rev. Stat. § 403.180 (permitting courts to find divorce-related settlement agreements unconscionable). The Court must therefore draw on other, more generally applicable evidence to interpret Judge Caudill's order.

In the absence of settlement-specific cases to provide guidance, basic principles of contract law, as applied to the circumstances of this case, must govern. *See Humana, Inc. v. Blose*, 247 S.W.3d 892, 895 (Ky. 2008) ("Settlement agreements are a type of contract and therefore are governed by contract law." (internal quotation marks omitted)). Under Kentucky law, courts may hold contracts or contractual provisions void and unenforceable if they violate public policy. *Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 688 (Ky. 2012); *see also S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 821 (Ky. 2008) (collecting cases). The legislature is chiefly responsible for establishing public policy, but in the

---

[1] *But see Ladd v. Premium Hardwoods, Inc.*, No. 2010-CA-875, 2011 WL 1706773, at *2 (Ky. Ct. App. May 6, 2011) (tantalizingly noting that settlement agreements are "subject to the court's scrutiny" and become unenforceable "when procured by fraud or a material misrepresentation" but elaborating little on this theme).

absence of a legislative decree the courts may also adopt and apply public policy principles. *Wehr Constructors*, 384 S.W.3d at 687–88. A contract that "seriously offends . . . public policy" is "void *ab initio*." *Commonwealth v. Whitworth*, 74 S.W.3d 695, 700 (Ky. 2002) (citing *Black's Law Dictionary* 1568 (7th ed. 1999)).

Judge Caudill's order, as best construed, fits this mold. The order reflects a policy of preventing judicial bias and misconduct from affecting the rights of innocent parties appearing before the Kentucky courts. As the order stated, Judge Bamberger's conduct—which violated the Canons of Judicial Conduct—cast "reasonable doubt on his capacity to act impartially as a judge" and "gave the appearance of impropriety." R. 82-11 at 2 (quoting a ruling by the Judicial Retirement and Removal Commission). This so tainted the "settlement born from a bifurcated trial over which Judge Bamberger presided" that "the integrity of the judicial process" required the court to set aside both the jury verdict on damages and the Settlement Agreement. *Id.* at 3. In other words, even if the parties properly negotiated at arms' length and reached an agreement containing terms that might otherwise be fair, the unethical judicial backdrop against which they negotiated rendered the Settlement Agreement unenforceable. And, based on the principles of Kentucky law discussed above, this meant that the Settlement Agreement was *never* enforceable, even if the parties initially believed they were operating under a binding contract.

## II. Arrowood's Breach of Contract Claim Fails Because No Contract Between the Parties Exists.

Due to the result just reached, Arrowood's breach of contract counterclaim must fail. Under Kentucky law, to prove breach of contract, a plaintiff must demonstrate: (a) The existence of a contract, (b) a breach of one of the contract's terms, and (c) damages flowing

5

from the breach of the contract. *Adler v. Elk Glenn*, No. 12-85, 2013 WL 6632057, at *1 (E.D. Ky. Dec. 17, 2013) (citing *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007)). Arrowood's theory is this: The Ellis Parties breached the Settlement Agreement when they withdrew their promise to release Arrowood from all liability but kept the settlement funds. R. 81-1 at 25, 29. Accordingly, contract law requires the Court to restore the parties to the *status quo ante*. *Id.*

Because the Court has already concluded that the Settlement Agreement was void *ab initio*, Arrowood cannot establish the existence of the first element of its breach of contract claim. Under Kentucky law, a party may not predicate a cause of action upon a void contract. *See Smith v. Agnew*, 122 S.W. 231, 231 (Ky. 1909) ("As the contract was void—in fact, no contract—it is clear that a cause of action predicated upon it cannot be maintained, as the law will not enforce what it has forbidden and denounced."). And Arrowood propounds no other basis for its breach of contract counterclaim. *See* R. 28 at 13–15 (alleging that the Ellis Parties "effectively breached the Settlement Agreement"). Thus, no genuine issue of material fact remains as to the existence of a valid contract.

For this reason, the Court will deny Arrowood's motion for summary judgment on its breach of contract claim, R. 81-1 at 28–30, and will grant the Ellis Parties' motion for summary judgment, R. 82-1 at 16–17. Because the Court has found against Arrowood on the merits of its counterclaim, the Court need not reach the Ellis Parties' remaining arguments in support of summary judgment.

### III. Arrowood's Restitution Counterclaim Is Barred by a Kentucky Statute of Limitations.

Arrowood's restitution counterclaim stands on somewhat different footing. The Ellis Parties supply three reasons for why the Court should not reach the merits of Arrowood's counterclaim: (1) because Arrowood is not the real party in interest in this case; (2) because the doctrine of laches bars Arrowood's claim; and (3) because a Kentucky statute of limitations prevents Arrowood from bringing its claim at this time. The last of these arguments has merit, so the Court will grant summary judgment to the Ellis Parties on Arrowood's counterclaim.

#### A. Arrowood Is the Real Party in Interest in this Case.

The Ellis Parties challenge Arrowood's standing to bring its restitution counterclaim on the basis that it was not a real party in interest in the underlying dispute. R. 82-1 at 23. Rule 17(a)(1) of the Federal Rules of Civil Procedure provides that every action must be "prosecuted in the name of the real party in interest." State law governs the Court's determination of the real party in interest in diversity actions. *Certain Interested Underwriters at Lloyd's, London v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994). Under Kentucky law, the real party in interest is the party that "wins, or loses, depend[ing] upon the resolution of the questions" and that "is entitled to the benefits of the action upon the successful termination thereof." *Harris v. Jackson*, 192 S.W.3d 297, 303 (Ky. 2006). These characteristics describe Arrowood's role in this litigation, so Arrowood is the real party in interest.

A few points support denying the Ellis Parties' motion. First, even if Arrowood were not the real party in interest, the Court would need to provide "reasonable time" for the real party in interest to ratify or join the action. Fed. R. Civ. P. 17(a)(3). Thus, summary

7

judgment is not the appropriate remedy at this juncture for any Rule 17 violation. Second, despite protestations to the contrary by the Ellis Parties, the Kentucky Supreme Court has not already ruled on this precise question. In *Ellis v. Caudill*, No. 2006-SC-660, 2007 WL 1790397, at \*1–\*2 (Ky. June 21, 2007), the Kentucky Supreme Court affirmed the lower court's decision to set aside the settlement agreement between the Ellis Parties and the law firms insured by Arrowood. The court stated that "[a]s applied to cases involving an insured and an insurer, the liability insurance company of a defendant tortfeasor is not a real party in interest to a lawsuit *over the tortfeasor's liability*." *Id.* at \*4 (emphasis added). That is, because one law firm's alleged legal malpractice still remained "very much at issue," only the law firm could seek to have the settlement cast out. *Id.* Here, however, Arrowood's counterclaims do not concern either law firm's liability. So *Ellis* does not control the outcome of this case.

Instead, Arrowood bears all of the markers of a real party in interest. For instance, Arrowood is "entitled to the benefits of the action upon the successful termination thereof." *Harris*, 192 S.W.3d at 303. If the Court finds in favor of Arrowood on its counterclaims, then Arrowood, and not the law firms, will receive restitution. The law firms acknowledged that much on the record. R. 81-9 at 8–9. Similarly, Arrowood remains "actually and substantially interested in the subject" of its counterclaims. *Ellis*, 2007 WL 1790397, at \*4. Arrowood believes that the Settlement Agreement precludes the Ellis Parties from bringing its UCSPA claims without first returning the settlement funds. Given the relationship between its counterclaims and the Ellis Parties' UCSPA claims—which are targeted at Arrowood and not the law firms—Arrowood clearly has an important stake in this litigation. The Court must therefore deny this ground for summary judgment.

## B. The Doctrine of Laches Does Not Bar Arrowood's Counterclaim.

The Ellis Parties next argue that the doctrine of laches prevents Arrowood from making its restitution and breach of contract claims. R. 82-1 at 18–23. They note that 7.5 years have passed since they received the settlement funds and that Ellis has paid taxes on and otherwise spent that money in the interim. *Id.* at 18. He has, for example, paid $500,000 to attorneys and set another $800,000 in escrow, placed $215,000 in an insurance account for the benefit of his son, and retired to Florida using the remaining funds. *Id.* at 22; *see* R. 82-4; R. 82-15 at 9. Because requiring the Ellis Parties to repay the funds would not be inequitable, the Court must reject this argument.

The doctrine of laches bars claims where a party engages in an unreasonable delay in asserting a right. *Barnette v. Grizzly Processing, LLC*, 809 F. Supp. 2d 636, 651–52 (E.D. Ky. 2011) (citing *Plaza Condo. Ass'n, Inc. v. Wellington Corp.*, 920 S.W.2d 51, 54 (Ky. 1996)). The delay must "result in injury or work[] a disadvantage to the adverse party." *Id.* at 652 (internal quotation marks omitted) (alterations in original). That is, laches requires "a change in position" to the point that the adverse party "could not be restored to [its] former state and that it would be inequitable to enforce the action of the plaintiff." *Id.* at 653 (internal quotation marks omitted) (alterations in original); *see* Restatement (First) of Restitution § 148 (1937). Laches will not prevent a suit from proceeding where the recipient used the money for living expenses or gifts, "'unless such expenses were incurred or gifts made because of the receipt of the money and the amount of such payment was of such size that considering the financial condition of the payee it would be inequitable to require payment.'" *Alexander Hamilton Life Ins. Co. of Am. v. Lewis*, 550 S.W.2d 558, 559–60 (Ky. 1977).

In this case, Arrowood has not unduly delayed its attempt to claw back the settlement funds. The Ellis Parties have been on notice since 2006 that they might have to return the settlement funds to Arrowood. They acknowledge as much in their motion for summary judgment: "Over the next seven (7) years multiple mediations were ordered and each time Arrowood/DPIC *demanded return of all or a portion of the settlement*." R. 82-1 at 4–5 (emphasis added). The Kentucky court hearing the case also advised them of the possibility of repayment on many occasions. *See* R. 86-14 at 14. Since the Ellis Parties have known for years of their uncertain claim to the settlement funds, there is no reason why Ellis's decision to dissipate the money should bar Arrowood from seeking its return. *Cf. Lewis*, 550 S.W.2d at 560 ("[I]s it fair that the stockholders of the insurance company lose $7200 because the Lewises have spent the money?"). The Court will therefore deny this ground for summary judgment.

### C. Arrowood's Restitution Counterclaim Is Time-Barred.

The third time is a charm for the Ellis Parties: A Kentucky statute of limitations bars Arrowood's restitution counterclaim. The parties separately propose five statutory provisions that might govern in this case: Ky. Rev. Stat. §§ 413.090(1), 413.090(2), 413.120(1), 413.120(5), and 413.120(7). The first two provide for a fifteen-year limitations period, while the last three prescribe a five-year time limit. Since Judge Caudill set aside the Settlement Agreement in 2006, Arrowood's counterclaim can only survive if one of the fifteen-year provisions applies. For the reasons described below, Arrowood's counterclaim is time-barred.

The parties believe that the answer turns on whether the Court characterizes Arrowood's restitution counterclaim as unjust enrichment or as some other theory of

restitution. This question is more intractable than it might seem. Under Kentucky law, the equitable doctrine of unjust enrichment and the remedy of restitution share undeniably close kinship. *Herman v. Jackson*, 405 S.W.2d 9, 11 (Ky. 1966) ("[A] person who has been unjustly enriched at the expense of another must make restitution."); *accord* Restatement (First) of Restitution § 1 (1937). Indeed, the Supreme Court of Kentucky has consistently characterized restitution as "a restoration to prevent unjust enrichment." *Cheyenne Resources, Inc. v. Elk Horn Coal Corp.*, 265 S.W.3d 184, 187 (Ky. 2008) (internal quotation marks omitted); *see Lewis*, 550 S.W.2d at 559 (justifying restitution on the principle that "one should not be unjustly enriched at the expense of another"). At the same time, however, some evidence suggests that paths other than unjust enrichment can lead to the remedy of restitution in Kentucky. For instance, Kentucky courts have recognized that the equitable doctrine of unjust enrichment "is applicable as *a basis* of restitution." *Rose v. Ackerson*, 374 S.W.3d 339, 343 (Ky. Ct. App. 2012) (internal quotation marks omitted) (emphasis added); *see also* 66 Am. Jur. 2d Restitution & Implied Contracts § 2 (describing unjust enrichment as a "restitution-based claim[]"). And the Court has encountered examples of Kentucky courts permitting litigants to bring claims directly for restitution. *E.g.*, *Cheyenne Resources*, 265 S.W.3d at 186 (The plaintiff "brought this claim as a claim for restitution.").

When confronted with the Gordian knot, Alexander the Great wasted no time struggling to untie it: He sliced right through it with his sword. Similarly, the Court need not worry about the best characterization of Arrowood's counterclaim. No matter which legal theory best describes Arrowood's restitution counterclaim, the answer is the same: A five-year statute of limitations applies. Begin with § 413.090(2), which establishes a fifteen-

year deadline for any "action upon a . . . written contract." As the Court has already determined, Judge Caudill invalidated the Settlement Agreement as void *ab initio*, and no other written contract between the parties exists. Accordingly, this statute of limitations cannot apply to Arrowood's restitution counterclaim.

Section 413.090(1), which provides a fifteen-year period in which to file any "action upon a judgment or decree of any court of this state . . . , the period to be computed from the date of the last execution thereon," has similarly little relevance. Judge Caudill never issued a judgment upon which Arrowood could base its restitution counterclaim; he issued an order reopening the case and setting aside the Settlement Agreement. And the Court cannot shoehorn this order into the term "decree." *See, e.g.*, Ky. Rev. Stat. § 22A.020(1) (distinguishing between judgments, orders, and decrees). Arrowood has offered no evidence that "order" and "decree" are synonymous. In fact, Kentucky courts typically employ the term "decree" in contexts that suggest a degree of finality that an order typically lacks. *E.g.*, *Ellis v. Ellis*, 420 S.W.3d 528, 529 (Ky. Ct. App. 2014) (describing the instrument granting the parties' divorce as a "final decree"); *see also Black's Law Dictionary* (9th ed. 2009) (defining decree as "[t]raditionally, a judicial decision in a court of equity . . . similar to a judgment of a court of law"). The text of § 413.090(1) also implies that a decree, like a judgment, finally resolves a dispute. *See* § 413.090(1) (contemplating the execution of a decree); *Wade v. Poma Glass & Spec. Windows, Inc.*, 394 S.W.3d 886, 887 (Ky. 2012) (defining execution as the "act of enforcing, carrying out, or putting into effect the judgment"). These cues make clear § 413.090(1)'s fifteen-year timeline does not apply in this case.

That leaves Ky. Rev. Stat. § 413.120, with its five-year limitations period. Multiple courts have identified § 413.120(1), for actions "upon a contract not in writing, express or implied," as the appropriate statute of limitations for unjust enrichment claims. *Tritschler v. Haire*, No. 5:07-437-JMH, 2009 WL 1515763, at *4 n.9 (E.D. Ky. June 1, 2009); *Thompson v. Ky. Fried Chicken Corp.*, No. C85-755-L(J), 1993 WL 764505, at *3 (W.D. Ky. Jan. 25, 1993); *see also Lovely v. Burchard*, No. 2010-CA-2182, 2012 WL 1231951, at *2 (Ky. Ct. App. Apr. 13, 2012) (referencing a lower court's order dismissing an unjust enrichment claim as barred by Ky. Rev. Stat. § 413.120). And, if Arrowood's restitution claim arises under some other theory, it appears to be captured by § 413.120(7), which sets a five-year statute of limitations for actions "for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated."

Thus, because the time to file began to run at latest in 2006, when Judge Caudill set aside the Settlement Agreement, § 413.120's five-year limit bars Arrowood from bringing its restitution counterclaim. The Court will therefore grant the Ellis Parties' motion for summary judgment and deny Arrowood's motion for summary judgment with respect to the restitution counterclaim.

**IV.  The Court Cannot Render a Final Decision on the Ellis Parties' UCSPA Claims at this Juncture.**

Arrowood offers the Court two reasons for granting summary judgment in its favor on the Ellis Parties' claims arising under the UCSPA. First, Arrowood alleges that the Ellis Parties failed to take a predicate step—returning the settlement funds—before filing their complaint. R. 81-1 at 22–23, 25. Second, Arrowood attacks the sufficiency of the Ellis Parties' evidence in support of their claims. *Id.* at 33–40. While Arrowood's first argument

13

fails due to the invalidity of the Settlement Agreement, the parties have not yet completed discovery on the second argument, so the Court will not rule upon that issue at this stage.

**A.     When the Ellis Parties Filed Their Complaint, an Independent Duty to Return the Settlement Funds Did Not Arise.**

Arrowood's first assault on the Ellis Parties' UCSPA claims analogizes Judge Caudill's order to contractual rescission or avoidance. R. 81-1 at 22–23, 25. Essentially, Arrowood argues that the Ellis Parties' UCSPA claims violate the terms of the Settlement Agreement, which purportedly prohibited them from filing suit against Arrowood at any time in the future. *Id.* at 22–23. This, to Arrowood, constitutes an attempt to avoid the settlement. *Id.* As Arrowood points out, before a party may file a rescission claim, he must "return or offer to return whatever he has received" pursuant to the agreement. *Ky. Cent. Life & Accident Ins. Co. v. Burrs*, 75 S.W.2d 744, 745 (Ky. 1934); *accord McGregor v. Mills*, 280 S.W.2d 161, 162–63 (Ky. 1955) ("Before one can maintain an action to avoid a settlement and recover a larger amount he must return or tender a return of the sum received by him in the settlement.").

This theory has one major hole: Judge Caudill set aside the Settlement Agreement long before the Ellis Parties filed their complaint in this case. What is more, he did so at the request of *one of the law firms insured by Arrowood*. R. 82-11 at 3. How then can the Court characterize the Ellis Parties' complaint as an attempt to avoid or rescind the Settlement Agreement, when no valid contract between the parties ever existed? The Court also notes that, at least initially, Judge Caudill permitted the Ellis Parties to retain the settlement funds while the parties attempted to re-settle the case. *See* R. 82-6 at 13 (declining to decide how to deal with the settlement funds before the parties completed mediation and speculating that

14

"[i]t may come down there's going to be some money paid back."). Arrowood took no steps, apart from saber-rattling during mediation, to ensure the return of the settlement funds. In light of this evidence, the Ellis Parties did not breach an obligation to Arrowood when they held onto the settlement funds pending the outcome of mediation between the parties, and nothing precludes them now from bringing their UCSPA claims.

> B. **Arrowood's Remaining Grounds for Summary Judgment on the Ellis Parties' UCSPA Claims Are Premature.**

Arrowood also seeks summary judgment on the Ellis Parties' UCSPA claims, arguing that no genuine issue of material fact exists as to certain elements of those claims. R. 81-1 at 33–40. An insurer's violation of the UCSPA creates a cause of action both for the insured and for those—like the Ellis Parties—who have claims against the insured. *Nationwide Mut. Fire Ins. Co. v. Jahic*, No. 3:11-cv-155, 2014 WL 1257023, at *1 (W.D. Ky. Mar. 26, 2014). To state an UCSPA claim, a plaintiff must initially show evidence of "intentional misconduct or reckless disregard of the rights of an insured or a claimant by the insurance company that would support an award of punitive damages." *Id.* (internal quotation marks omitted). The plaintiff must then establish three elements: (1) the insurer was obligated to pay the claim under the terms of the policy; (2) the insurer lacked a reasonable basis in law or fact for denying the claim; and (3) the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. *Id.* at *2 (citing *Wittmer v. Jones*, 864 S.W.2d 864, 890 (Ky. 1993)).

As an attorney to the Ellis Parties explains in a Rule 56(d) declaration, the parties have not completed discovery on these claims. R. 86-18. They are engaged in an ongoing discovery dispute concerning 3,000 pages of potentially privileged materials, and as a result

the Ellis Parties have not yet taken witness depositions. *Id.* The Court agrees that deciding this motion now would harm the Ellis Parties, who have not yet gathered the information necessary to defend against summary judgment. Consequently, the Court will deny without prejudice Arrowood's motion for summary judgment with respect to the Ellis Parties' bad faith claims. *See* Fed. R. Civ. P. 56(d)(1) (permitting the Court to deny a motion for summary judgment where the nonmovant shows by affidavit or declaration that it cannot present facts essential to justify its opposition).

Accordingly, it is **ORDERED** that:

(1) The Ellis Parties' motion for summary judgment, R. 82, is **GRANTED**.

(2) Arrowood's motion for summary judgment on its breach of contract and restitution counterclaims, R. 81, is **DENIED**.

(3) Arrowood's motion for summary judgment on the Ellis Parties' bad faith claims, R. 81, is **DENIED WITHOUT PREJUDICE**. Arrowood may refile its claim within **thirty days** after Magistrate Judge Smith issues a ruling on its motion for a protective order, R. 57. If Arrowood does not do so, the Court will set pretrial and trial dates in this case.

This the 23rd day of June, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge