UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JAMES A. ELLIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 12-140-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ARROWOOD INDEMNITY | ) | **& ORDER** |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

In 1998, plaintiffs James Ellis and his architecture firm (collectively, "the Ellis Parties") sued two former law firms, now joined by defendant Arrowood Indemnity Company (collectively, "Arrowood"), for malpractice. After seven contentious years, the parties finally reached a settlement in 2005. But that settlement was set aside when a Kentucky judicial commission concluded in 2006 that the presiding judge had failed to disclose a conflict of interest. After six more years of fruitless negotiations, the Ellis Parties finally reached a new settlement agreement with Arrowood. Five weeks later, on November 5, 2012, the Ellis Parties sued Arrowood for statutory bad faith and deceptive trade practices. At the close of discovery, Arrowood moved for summary judgment. For the reasons discussed below, the Court will grant the motion as to claims that accrued before November 5, 2007, and deny the motion as to claims that accrued after November 5, 2007.

## BACKGROUND

Because the Court previously recounted the facts in this case, *see Ellis v. Arrowood Indem. Co.*, No. CIV. 12-140-ART, 2014 WL 2818458, at *1 (E.D. Ky. June 23, 2014), a brief review suffices here.  Seventeen years ago, the Ellis Parties sued two of their former law firms for malpractice.  *Ellis v. Caudill*, No. 2006-SC-660, 2007 WL 1790397 (Ky. June 21, 2007).  As the result of a trial on damages only, the jury found that, if liable, Arrowood would owe the Ellis Parties more than three million dollars. *Arrowood Indem. Co.*, 2014 WL 2818458, at *1.  Soon thereafter, the parties settled their dispute (the "2005 settlement").  *Id.*  As a result of the 2005 settlement, Arrowood paid the Ellis Parties $3.965 million.  *Id.*  But, when a business relationship between the presiding judge and the Ellis Parties' trial consultant emerged, the new judge set aside the 2005 settlement.  *Ellis*, 2007 WL 1790397, at *2.  Despite court-ordered mediation, the dispute continued for six years after the set-aside.  *Arrowood Indem. Co.*, 2014 WL 2818458, at *1.  On November 5, 2012, five weeks after the parties finally settled the original dispute, the Ellis Parties filed a different suit against Arrowood—this time for bad faith and deceptive trade practices in violation of the Kentucky Unfair Claims Settlement Practices Act ("UCSPA"), KRS § 304.12-230.  R. 1-1 at 7–9.

## DISCUSSION

Summary judgment is only appropriate when the pleadings and discovery materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Sullivan v. Oregon Ford, Inc.*, 559 F.3d 594, 594 (6th Cir. 2009) (quoting former Fed. R. Civ. P. 56(c)).  When evaluating a motion for summary judgment, the Court must draw all inferences and view all facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Once the moving party meets its initial burden to identify the parts of the record that "demonstrate[] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986), the burden shifts and the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *United States v. Dusenbery,* 223 F.3d 422, 424 (6th Cir. 2000) (quoting former Fed. R. Civ. P. 56(e)).

Here, Arrowood filed a motion for summary judgment on three grounds: (1) the applicable statute of limitations bars the Ellis Parties' claims that accrued more than five years before this suit, (2) the Ellis Parties failed to state a claim under the UCSPA, and (3) the Ellis Parties cannot establish damages. Because the Ellis Parties can assert a claim and establish damages under the UCSPA, the Court will grant Arrowood's motion only as to the time-barred claims that accrued before November 5, 2007.

## I.     The Ellis Parties' UCSPA claims that accrued before November 5, 2007 are barred by a Kentucky statute of limitations.

For statutes like the UCSPA, which create liability but do not fix a statute of limitations, Kentucky law bars claims filed more than "five years after the cause of action accrued." KRS § 413.120(2). The Ellis Parties filed this suit on November 5, 2012. R. 1-1 at 2. So the Ellis Parties' claims for bad faith and deceptive practices that accrued before November 5, 2007 are time-barred. Though the Ellis Parties also allege instances of bad faith within the five years before they filed this suit, R. 86-16 at 2–3, Arrowood only seeks summary judgment on those that accrued before November 5, 2007. R. 121-1 at 28–30.

Claims accrue "when the cause or the foundation of the right [of action] [come] into existence." *Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. 1972) (citing *Jordan v. Howard*, 54 S.W.2d 613, 615 (Ky. 1932)).  A cause of action does not come into existence until "the last event necessary to create the cause of action occurs." *See Combs v. Int'l Ins. Co.,* 354 F.3d 568, 591 (6th Cir. 2004).  In Kentucky, that last event occurs at the "juncture of wrong and damage." *See Dodd v. Pittsburg, C., C. & St. L.R. Co.*, 106 S.W. 787, 794 (Ky. 1908).

The Ellis Parties admit they suffered wrongs and damages before November 5, 2007.  In its "Concise Statement of Material and Indisputable Facts Supporting Summary Judgment," Arrowood states that "[t]he Ellis Parties' asserted bad faith and deceptive practice claims against Arrowood are purely statutory claims pursuant to the UCSPA" and "began to accrue as early as September 2004."  R. 121-1 at 19, ¶¶ 19, 20.  The Ellis Parties respond in the same way to both assertions:  "Agree."  R. 122 at 12, ¶¶ 19, 20. Arrowood also states the Ellis Parties allege "'instances' [of bad faith] that begin in September 2004, additional 'instances' prior to their acceptance and retention of the original $3,965,000 payment on June 5, 2005, and then more 'instances' after this payment."  R. 121-1 at 19, ¶ 22.  Again, the Ellis Parties, "[a]gree[d]."  R. 122 at 12, ¶ 22.

Even without these blanket admissions, the Ellis Parties' specific allegations compel the same conclusion—that the Ellis Parties suffered "wrong and damage" before November 5, 2007.  During discovery, Arrowood sent the Ellis Parties the following interrogatory:  "Identify the period of time during which you allege Defendants acted in bad faith and identify with specificity the actions taken or not taken by Defendants which you allege were in bad faith."  R. 121-9 at 1.  In response, the Ellis Parties' listed

Arrowood's "[s]pecific instances of bad faith" that occurred "between September 8, 2004 and . . . the present [day]":

(1)   The Arrowood Adjuster's "refusal to appear in person at the first September 8, 2004 Mediation."
(2)   Arrowood's "refusal to attend the Court-ordered January 14, 2005 Mediation."
(3)   Arrowood's "refusal to settle the litigation for the amount of the November 17, 2004 Jury Award."
(4)   Arrowood's "refusal to settle after the January 28, 2005 settlement amount that was within policy limits and later executed by a Settlement and Release on May 26, 2005, or at any of the multiple mediations held throughout the course of litigation despite liability being clear."
(5)   Arrowood's "refusal to re-settle at the May 4, 2006 Mediation despite liability being clear."

R. 121-9 at 1–2.  The Ellis Parties' reiterated these instances of bad faith in their response to Arrowood's motion for summary judgement:  Until May 6, 2005, they argue, Arrowood repeatedly refused to settle despite "multiple demands by the insureds for the case to settle within policy limits" in order "to not risk an excess liability verdict."  R. 122 at 13; *see also* R. 122-2 (explaining that the insured law firms had both demanded that Arrowood settle with the Ellis Parties within the policy limit).  The Ellis parties also claim that after the set-aside of the 2005 settlement, and throughout 2006 and 2007, Arrowood "repeatedly refused to simply resettle the case on the terms it had always considered not only fair, but *below* the authority granted to its adjustors."  R. 122 at 3–5.  Because these wrongs occurred before November 5, 2007, they predate the Ellis Parties' filing date by more than five years.

The Ellis Parties also claim damages that predate November 5, 2007.  *See Dodd*, 106 S.W. at 794 ("It is a juncture of wrong and damage that gives rise to a cause of action.").  During his deposition, Ellis agreed that he was "seeking bad faith damages" for

5

the period of time "[g]oing back to [the 2004] mediation [that Arrowood] boycotted." *Id.* at 220.  Ellis said that he started suffering mental and emotional symptoms "related to this claim" in the fall of 2005.  *See* R. 121-10 at 256.  The Ellis Parties' list of "compensable damages resulting from defendants' violations of Kentucky's UCSPA statutes" includes more than 150 individual expenses incurred between September 27, 2005, and November 1, 2007—five years and four days before the Ellis Parties filed this action.  *See* R. 121-12 at 3, 6–13.  So, even based on the Ellis Parties' own, specific allegations, they reached the "juncture of wrong and damage" more than five years before the date of filing.  *See Dodd*, 106 S.W. at 794.

The Ellis Parties also agree that the "five-year limitation period applies."  R. 122 at 25.  But, predictably, they do not concede that the statute of limitations bars their pre-2007 claims.  Instead, the Ellis Parties argue that "the broad public policy underlying the [UCSPA] . . . allows for claims against an insurer for the entire course of an insurer's bad faith claims handling."  R. 122 at 25.  In support, the Ellis Parties cite *Knotts v. Zurich Ins. Co.,* 197 S.W.3d 512, 517 (Ky. 2006)).  But *Knotts* has nothing to do with any statute of limitations and so cannot even arguably support the Ellis Parties' position.

The Ellis Parties also claim that their pre-2007 claims are not time-barred because Arrowood's alleged bad-faith conduct "constituted a continuing violation . . . under the [UCSPA]."  R. 122 at 26.  As a result, the Ellis Parties argue, they only needed to file their claims within five years of the insurance claim's *resolution.  Id.* at 25 ("Ellis brought his claim five weeks after the conclusion of the underlying litigation, well within the five-year limitation period.").  But Kentucky has never applied the continuing violation doctrine to claims under the UCSPA, and the Ellis Parties do not cite a single case in support of their

novel theory. Indeed, they do not develop any argument for why the doctrine should apply in this case—except to incorrectly warn that "[t]his is exactly the kind of conduct the *Knotts* Court feared would happen if the [UCSPA] was limited." *Id.* at 26. Such "perfunctory" treatment of an issue, "unaccompanied by some effort at developed argumentation," necessarily waives the issue. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). It is not the Court's job—nor, arguably, prerogative—to put flesh on the bones of so skeletal an argument. *See id.* at 995–96.

Regardless, the Ellis Parties are wrong; the continuing violation doctrine does not apply here, and it is worth noting why. Kentucky courts and the Sixth Circuit are only willing to apply the continuing violation doctrine to certain employment discrimination claims and common law property claims with well-established continuing violation exceptions—unless, of course, the Kentucky legislature explicitly directs otherwise. *See LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995) ("Courts have been extremely reluctant to apply this doctrine outside of the context of Title VII."); *Phat's Bar & Grill, Inc. v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:10-CV-00491-H, 2013 WL 124063, at *4 (W.D. Ky. Jan. 9, 2013) ("Kentucky courts have traditionally only applied the doctrine in employment discrimination contexts."); *Com., Natural Res. & Envtl. Prot. Cabinet v. Kentucky Ins. Guar. Ass'n*, 972 S.W.2d 276, 285 (Ky. Ct. App. 1997) ("[T]he legislature has the ability to carve out an exception to [the statute of limitations] for continuing violations, so its inaction must be construed to manifest an intent to include them within the limitations period."); *Fergerson v. Utilities Elkhorn Coal Co.*, 313 S.W.2d 395 (Ky. 1958) (explaining the limited application of the

continuing trespass doctrine).  With no exception to the statute of limitations, UCSPA claims are time-barred five years after they accrue.  *See* KRS § 413.120(2).

This opinion does not, in any way, condone Arrowood's pre-2007 actions.  But parties cannot sit on claims—even strong claims—indefinitely.  *See Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945) ("[Statutes of limitations] are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim.").  Ellis hired a new attorney in December 2008.  R. 121-10 at 146.  Soon after, that attorney advised Ellis to "keep a low profile" in the hopes that the judge would not order him to return the 2005 settlement money.  *Id.* at 146–49.  Ellis could have rejected that advice, raced to the courthouse, and filed his claims under the UCSPA.  Instead, Ellis's sat on his rights for three more years.  When the legislature chooses to elevate the value of finality over the potential merits of a claim, it is not for this Court to insert its own judgment to the contrary.

Ellis argues that he had no choice but to lay low—after all, he had no hope of paying the money back, as the judge would have ordered if Ellis had asked for a new trial on liability.  *See* R. 122-16 at 33.  But that dilemma is precisely what a prompt claim under the UCSPA could have remedied.  Ellis could have filed his claims under the UCSPA as soon as, in his view, Arrowood unreasonably delayed settlement and caused harm despite clear liability.  Instead, Ellis chose to wait.  Because he waited too long— more than five years—the statute of limitations bars the Ellis Parties' claims for bad faith and deceptive trade practices that accrued before November 5, 2007.

II.     **The Ellis Parties assert a claim under the UCSPA.**

According to Arrowood, the post-2007 claims must fail as well, because the Ellis Parties cannot state a claim under the UCSPA. In support, Arrowood makes numerous, sometimes contradictory, arguments. All are unpersuasive.

A.     **An insurer can violate the UCSPA without denying the claim.**

First, Arrowood points to the Kentucky Supreme Court's seminal opinion on the UCSPA, in which the court adopted a three-element test for a bad faith claim under the UCSPA: "(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for _denying_ the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for _denying_ the claim or acted with reckless disregard for whether such a basis existed." *See* R. 121-1 at 23 (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). The Ellis Parties do not argue that Arrowood actually denied their claim. So, because *denial* of the claim is "a required element of *Wittmer*," Arrowood argues, the Ellis Parties cannot prevail. *Id.* at 24.

But Arrowood is wrong. The Ellis Parties do not need to prove that Arrowood denied Ellis's claim. Even a cursory review of Kentucky Supreme Court and Sixth Circuit case law, which is binding on this Court, compels the same conclusion. *See Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 704 (6th Cir. 2012) (quoting *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 376 (Ky. 2000)) ("The Kentucky Supreme Court has cautioned insurance companies that 'coming up with an amount that is within the range of possibility is not an absolute defense to a bad faith case.'").

That *Wittmer* wrote in terms of "denial" merely reflected the UCSPA provisions at issue in the case. In *Wittmer*, the plaintiff asserted claims under UCSPA subsections (4)

("Refusing to pay claims without conducting a reasonable investigation . . . .") and (14) ("Failing to promptly provide reasonable explanation of the basis . . . for denial of a claim . . . ."). 664 S.W.2d at 887, 889. *Wittmer* does not even mention the primary subsection at issue in this case, subsection (6) ("Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."). So it should not be surprising that *Wittmer* wrote in terms of "denying" claims.

A court—even the Kentucky Supreme Court—cannot rewrite the statute. *Compare JP Morgan Chase Bank, N.A. v. Longmeyer*, 275 S.W.3d 697, 702 n.10 (Ky. 2009) (quoting *Sutton v. Transportation Cabinet, Com. of Ky.*, 775 S.W.2d 933, 934 (Ky. Ct. App. 1989) ("[C]ourts are not 'empowered to rewrite statutes to suit our notion of sound public policy when the General Assembly has clearly and unambiguously established a different notion.'") *with J.A.S. v. Bushelman*, 342 S.W.3d 850, 865 (Ky. 2011) (Minton, C.J., dissenting) (explaining that he cannot join the majority opinion because "it is [not] proper for this Court to amend the statute[] by construing them in a manner contrary to the legislature's clear intent"). Nor does *Wittmer* purport to exercise such power. In the sentence immediately preceding the elements that Arrowood quotes, the *Wittmer* court acknowledges the specific context before it: "[A]n insured must prove three elements in order to prevail against an insurance company *for alleged refusal in bad faith to pay the insured's claim*." *Wittmer*, 864 S.W.2d at 890.

## B.   The UCSPA applies even when payment precedes settlement.

Arrowood next argues that the delay between the 2005 payment and the 2012 settlement could not have violated the UCSPA because "any delay in payment giving rise to a bad faith claim naturally must _precede_ the insurer's payment." R. 121-1 at 24–25.

10

Arrowood's argument misses the point.  The Ellis Parties' primary contention is that Arrowood delayed settlement, not payment.  *See* R. 122 at 17–24 (citing KRS § 304.12-230(6)).  And Arrowood cites no authority for the proposition that an insurance company cannot violate the UCSPA by disputing a prior payment in bad faith.  Indeed, once again, the precedent suggests otherwise.  The Sixth Circuit has already held that, under Kentucky law, the UCSPA applies to all three phases of insurance claim resolution—"negotiation, *settlement and payment* of claims."  *See Cobb King v. Liberty Mut. Inc. Co.*, 54 F. App'x 833, 836 (6th Cir. 2003) (quoting *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 98 (Ky. 2000)).  In so holding, the Sixth Circuit rejected the argument that one phase might escape the UCSPA's requirements based on its position in the sequence.  *See id.* ("[We decline] to adopt the position that once a settlement agreement is reached, the insurance company's actions are outside the purview of KUCSPA.").  Instead, the UCSPA applies "[u]ntil the claim is finally *settled and paid in full.*"  *Id.*  Certainly, in most cases, settlement precedes payment.  But, in either order, the UCSPA applies to both payment and settlement.  *See Guar. Nat. Ins. Co. v. George*, 953 S.W.2d 946, 949 (Ky. 1997) ("Clearly, one can envision factual situations where an insurer could abuse its legal prerogative in requesting a court to determine coverage issues [after fully paying the claim]. Those may well be addressed through . . . an action for bad faith.").

C.    **Once voided, the 2005 settlement did not absolve Arrowood of its duty under the UCSPA.**

Arrowood eventually argues that even if delaying settlement, rather than merely delaying payment, can violate the UCSPA, the Ellis Parties must "resort" to an "inventive attempt to salvage their claims."  R. 123 at 6.  That is, when the Ellis Parties inserted a

11

bracketed "re" into the language of subsection (6) to distinguish between the set-aside 2005 settlement and the much-delayed 2012 "[re]settlement," *see, e.g.*, R. 122 at 18, 21, 23, Arrowood accuses the Ellis Parties of "attempting to add new language to" the UCSPA. R. 123 at 6 (quoting R. 122 at 18). Arrowood essentially argues that its duty to "attempt[] in good faith to effectuate prompt, fair and equitable settlement" lapsed after the 2005 settlement. *See* KRS § 304.12-230(6). The word "resettlement," after all, never appears in the statute.

But this Court has already held that Judge Caudill's set-aside rendered the 2005 settlement void *ab initio*—as if it never happened. R. 90 at 5. So, from 2006 to 2012, there was no settlement in place. Arrowood has reason to be glad that was the case. If the 2005 settlement were still valid, then Arrowood's 2010 demand that Ellis return the settlement payment would raise its own concerns under the UCSPA. *See* R. 121-7 (motion for disgorgement/return of settlement funds). But the 2005 settlement was set aside—a fact the Ellis Parties' clarifying brackets did not change. So, with no settlement in place after 2006, the parties' 2012 agreement was a settlement—regardless of whether the Ellis Parties called it a "resettlement." From 2006 to 2012, the UCSPA required Arrowood to "attempt[] in good faith to effectuate prompt, fair and equitable settlement" of Ellis's claim, so long as "liability ha[d] become reasonably clear." *See* KRS § 304.12-230(6).

### D.    A jury could conclude that Arrowood acted outrageously.

Finally, Arrowood argues that, as a matter of law, the Ellis Parties cannot prove that Arrowood's actions were sufficiently outrageous as to constitute bad faith. R. 121-1 at 25–27. The bad faith "threshold is high." *United Servs. Auto. Ass'n v. Bult*, 183

S.W.3d 181, 186 (Ky. Ct. App. 2003).  Only "conduct that is outrageous," either because of an "evil motive" or "reckless indifference to the rights of others," is sufficient.  *Id.* Arrowood argues that the Ellis Parties' claims cannot clear this threshold because mere delay is not outrageous and because the 2005 settlement could not be outrageous since the Ellis Parties settled for the same amount in 2012.  Neither argument is persuasive.

Arrowood correctly notes that "mere delay" is not sufficiently outrageous to violate the UCSPA.  R. 121-1 at 26 (citing *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997)).  Delay only becomes outrageous when there is "evidence supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement."  *Glass*, 996 S.W.2d at 452–53.  According to Arrowood, there are "two undeniable, inarguable reasons" that it made "no effort or attempt . . . to 'extort' a 'more favorable' settlement."  R. 121-1 at 27.  Upon examination, both defy reason.  The first is that, after the 2005 payment, there was "simply nothing to 'extort' . . . because the Ellis Parties held and continue to hold *all* of the money."  *Id.*

But there *was* something to "extort" after the 2005 settlement payment—that something was the settlement payment itself.  Arrowood thought it should get the entire payment back.  R. 122-8 at 20 ("[A]ll of that money should come back to [Arrowood] because of the conduct of the judge.").  Indeed, Arrowood demanded that the Ellis Parties give up the settlement money.  R. 121-7 at 3 (motion for disgorgement/return of settlement funds).  In a 2012 email to an Arrowood adjustor, one of Arrowood's attorneys wrote, "The money is slowly coming back in."  *See* R. 122-37.  The Arrowood adjustor replied, "Progress, ever so slowly."  *Id.*  Why did Arrowood want the money back?  To gain leverage in settlement negotiations.  Arrowood's claims adjuster, Pamela Savage,

admitted as much in a 2006 email, writing "[i]n order to give us some strength in our [settlement] negotiations, we will be filing a motion for disgorgement of all settlement money." R. 122-11. And for what purpose did Arrowood need leverage? To get a lower settlement. After all, Arrowood refused to resettle for the same amount as the 2005 settlement. *See* R. 86-14 at 7 (Arrowood's attorney refusing to settle for the 2005 settlement amount plus one dollar).

Though Arrowood did not file the motion to disgorge the settlement payment until November 2010, it is hard to imagine a purpose the repayment demand might have served other than seeking "a more favorable settlement." *See Glass*, 996 S.W.2d at 452–53. Arrowood's own expert, Mark Arnzen, admitted that such conduct would meet the UCSPA standard: "[I]t would be outrageous for an insurance company to use plaintiff's financial condition as leverage to extract a more favorable settlement." *See* R. 136-2 at 52. A reasonable jury could certainly agree.

Arrowood's second "undeniable" reason it made no effort to extort a better settlement is equally nonsensical. *See* R. 121-1 at 27. Arrowood claims that "no 'more favorable' settlement could have been 'extorted'" because the 2005 settlement amount was precisely the same as the 2012 settlement amount. *Id.* If Arrowood truly believed it could not have gotten a settlement better than the 2005 settlement, then why—for six years—would Arrowood reject the best offer it could get? Arrowood may have a compelling explanation. But viewing the facts in the light most favorable to the Ellis Parties—as the Court must at this stage—a jury could fairly conclude that Arrowood delayed in order to "extort" a "more favorable settlement." *See Glass*, 996 S.W.2d at 452–53.

Arrowood also claims that its 2005 payment could not have been outrageous because the Ellis Parties settled for the same amount in 2012. R. 121-1 at 25. Once again, Arrowood misses the point. The Ellis Parties do not claim that the 2005 settlement amount was itself outrageous—Ellis wanted to keep the settlement in place. *See* R. 121-10 at 128. Instead, the Ellis Parties claim that it was outrageous for Arrowood to delay settlement for six years after the 2006 settlement was set-aside and to demand the settlement money back years after much of the settlement had gone to pay taxes and attorneys' fees. R. 122 at 18–21.

Though Arrowood's argument falls flat against the Ellis Parties, it carries more force against Arrowood. Arrowood has not explained why its settlement payment of $3.965 million was "fair and equitable" in 2005 and in 2012 but not during the years in between. Nor has Arrowood demonstrated what, if anything, made liability less than "reasonably clear" after the 2005 settlement. On these questions, and on others, genuine issues of material fact persist. And a jury could reasonably conclude that Arrowood's actions were outrageous. Accordingly, the Ellis Parties can assert a claim for statutory bad faith under the UCSPA.

### III.    The Ellis Parties can establish damages under the UCSPA.

The Ellis Parties claim pre- and post-judgment interest, attorneys' fees, settlement and mediation expenses, mental and emotional injuries, and punitive damages. R. 1-1 at 8, ¶¶ 36–37. Arrowood argues that the Ellis Parties' claims fail because, as a matter of law, they cannot succeed in establishing any compensatory damages. R. 121-1 at 30–31. And, "absent actual damage," Arrowood argues, the Ellis Parties cannot bring bad faith claims under the UCSPA. *Id.* at 31 (citing *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d

437, 452 (Ky. 1997) ("A condition precedent to bringing a statutory bad faith action is that the claimant was *damaged by reason of the violation of the statute*.")) (emphasis added).

But there is a genuine dispute as to damages.  Take, for example, Ellis's claim of "out-of-pocket travel/per diem expenses" that Ellis incurred during "attendance at multiple Court-ordered Hearings, Mediation/Settlement Conferences, and meetings with legal counsel."  R. 1-1 at 8, ¶ 37.  Arrowood argues that the Ellis Parties cannot claim these expenses because they filed the documentation after the supplemental disclosure deadline and because Kentucky law bars third-party claims for attorneys' fees.  *See* R. 121-1 at 31–34.  Both arguments fail.

True, the Ellis Parties filed the calculation of damages after the supplemental disclosure deadline.  *See* R. 121-12 at 2 (certifying that the Ellis Parties served Arrowood with the documentation on April 8, 2014); R. 17 at 2 (listing the supplemental disclosure deadline as August 20, 2013); R. 32 (same).  Indeed, the Ellis Parties should have produced the calculation of damages without prompting as part of their initial disclosure.  Fed. R. Civ. P. 26(a)(1)(A)(iii).  And when a party fails to supply information as required by Rule 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion . . . or at a trial"—"unless," of course, "the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

The Ellis Parties do not claim that the delay was justified, arguing instead that "Arrowood has made no showing they have been harmed by the timing of the damages calculations' disclosure."  R. 122 at 28.  Arrowood did not even allege harm in its motion for summary judgment.  R. 121-1 at 31–32.  And in its reply brief, Arrowood simply

argued that the late disclosure "clearly prejudiced and harmed Arrowood . . . because Arrowood was required to depose Mr. Ellis without such information."  R. 123 at 11. Arrowood never explains how deposing Ellis without the information caused harm. Arrowood does not list any question it would have asked Ellis about the documents.  And Arrowood does not point to any objection to the late disclosure.  Nor does Arrowood ever ask to re-depose Ellis in the nearly nine months between the late disclosure and the close of discovery.  *See* R. 70 at 2 (extending the close of discovery to December 31, 2014).

Nevertheless, the Ellis Parties' assertion of harmlessness fails for two reasons. First, Arrowood does not have the burden to demonstrate harm.  Instead, the Ellis Parties must prove that their delay was harmless.  *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010) ("The burden is on the potentially sanctioned party to prove harmlessness.").

And, second, the Ellis Parties failed to plead a necessary element of harmlessness. The Sixth Circuit interprets harmlessness in Rule 37(c) as requiring an "honest mistake" by the violating party and "sufficient knowledge" by the wronged party.  *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (quoting *Vance v. United States,* No. 98–5488, 1999 WL 455435, at *5 (6th Cir. June 25, 1999) (unpublished table decision)).  Even if Arrowood had sufficient knowledge, the Ellis Parties never claim that the discovery violation was an honest mistake.  *See* R. 122 at 27–29.  As a result, Rule 37(c) requires a sanction.  *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) (quoting *Vance ex rel Hammons v. United States,* 182 F.3d 920 (6th Cir. 1999)) ("[T]he [test] for exclusion of the evidence under Rule 37(c) . . . 'is very simple:

the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.'").

So the Court must impose a sanction—though not necessarily total exclusion. Rule 37(c) "tempers" the harshness of a mandatory sanction by authorizing courts to impose lesser sanctions. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 783–84 (6th Cir. 2003) (quoting *Vance v. United States,* No. 98–5488, 1999 WL 455435, at *4 (6th Cir. June 25, 1999)).  Because district courts are in the "best position" to examine discovery disputes, a court's "discretion is especially broad" in this context. *Ames v. Van Dyne*, 100 F.3d 956 (6th Cir. 1996) (quoting *Doe v. Johnson*, 52 F.3d 1448, 1464 (7th Cir. 1995)).

Here, total exclusion is not the appropriate sanction.  The Ellis Parties did not wait until the eve of trial to disclose their calculation of damages.  *See, e.g.*, *Rowe v. Case Equip. Corp.*, 105 F.3d 659 (6th Cir. 1997) ("Rowe's failure to disclose his expert's report until the eve of trial, leaving Case little opportunity to depose the expert and secure a rebuttal witness, was more than harmless to Case.").  Instead, the Ellis Parties produced the calculation of damages nearly nine months before the close of discovery.  *See* R. 70 at 2 (extending the close of discovery to December 31, 2014); R. 121-12 at 2 (certifying that the Ellis Parties served Arrowood with the documentation on April 8, 2014).  Arrowood never objected to the Ellis Parties' late disclosure nor asked to re-depose Ellis to cure any harm caused by the delay.  If not for the Ellis Parties' waiver, Arrowood's inaction might suggest that the delay was justified or harmless.  *See Roberts*, 325 F.3d at 783.  If nothing else, however, Arrowood's lack of concern until its motion for summary judgment suggests that total exclusion would be too harsh.

At any point during those nine months before discovery closed, Arrowood could have requested a second deposition of Ellis. *See* Rule 37(c)(1)(C) (authorizing a range of lesser sanctions including any the Court finds "appropriate"). Re-deposing Ellis would have cured the only harm that Arrowood claims from the late disclosure. *See* R. 123 at 10–11 (explaining that the late disclosure caused Arrowood harm because it had to depose Ellis without the calculation of damages). Instead of a lesser sanction, however, Arrowood requested only total exclusion—a sanction that is too harsh for the Ellis Parties' violation.

Arrowood also argues that the Ellis Parties cannot recover "attorneys' fees and expenses related to legal hearings and other legal activities" because this is a "third-party bad faith claim under the UCSPA." R. 121-1 at 32–33. When an insurer fails to promptly pay a valid claim, KRS § 304.12–235(3) authorizes "the insured person or health care provider . . . to be reimbursed for his reasonable attorney's fees." This Court has previously held that this provision does not apply to third-party claimants like the Ellis Parties because the statute's plain text only extends attorneys' fees to "insured person[s]" and "health care provider[s]." *Nevels v. Deerbook Ins. Co.*, No. CIV. 10-83-ART, 2011 WL 3903209, at *5 (E.D. Ky. Sept. 6, 2011) (citing *Glass*, 996 S.W.2d at 455 (limiting attorneys' fees to the "policyholder or the policyholder's health care provider")).

But the calculation of damages includes "out-of-pocket travel [or] per diem expenses" that Jim Ellis personally suffered as a result of his own attendance at various hearings, mediations, and settlement conferences—not attorneys' fees and expenses. *See* R. 1-1 at ¶ 37; R. 122 at 5 (citing R. 121-12) (referencing Ellis's "$91,160.45 in out of pocket expenses from participating in litigation"); R. 121-12 (listing numerous individual

payments to hotels and restaurants).  Arrowood does not demonstrate that all of the listed expenses in the calculation of damages fall within the statutory provision for attorneys' fees.  Indeed, in *Glass*—the same case that limits attorneys' fees to the "policyholder or the policyholder's health care provider"—the Kentucky Supreme Court held that the third-party plaintiffs were "[c]learly . . . entitled to their costs" and expenses.  *Glass*, 996 S.W.2d at 455 (citing KRS § 453.040(1)(a)).  So the limited authorization of attorneys' fees to first-party claimants in KRS § 304.12–235(3) cannot bar third-party claimants from seeking costs and expenses.

 *Glass* also concluded that "there is no basis for an award of any costs or expenses incurred . . . in this litigation except those authorized by KRS § 453.040(1)(a)," which allows a successful party to recover costs.  *Glass*, 996 S.W.2d at 455.  So, perhaps, Arrowood could have argued that the Ellis Parties cannot claim these expenses as damages and can only recover them after prevailing at trial.  But Arrowood did not plead KRS § 453.040(1)(a) as a ground for barring Elllis's damages, so the Court will not make the argument on its behalf.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

 And, regardless, the calculation of damages included at least some expenses that Jim Ellis incurred personally—not through attorneys—while trying to reach a settlement of the underlying insurance claim—not "in this litigation."  *Glass*, 996 S.W.2d at 455. Indeed, all of the expenses listed in the calculation of damages predated this lawsuit, some by more than five years.  *See* R. 121-12.  Construing the facts in the Ellis Parties' favor, there is at least a dispute as to whether these expenses count as "damages [that Ellis] sustained by reason of [Arrowood's] violation" of the UCSPA.  *See* KRS § 446.070; *State*

*Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 117–18 (Ky. 1988) (holding that KRS § 446.070 authorizes third-party plaintiff's like Ellis to recover damages that result from UCSPA violations).  Accordingly, Arrowood has failed to demonstrate that the Ellis Parties' claims must fail for lack of compensatory damages.

## CONCLUSION

After seventeen contentious years, this dispute continues still.  Though the Ellis Parties waited too long to bring their earliest claims against Arrowood, the claims that accrued after November 5, 2007 survive Arrowood's motion for summary judgment.

Accordingly, it is **ORDERED** that:

(1)   Arrowood's motion for summary judgment, R. 121, is **GRANTED** as to the Ellis Parties' claims that accrued before November 5, 2007, and **DENIED** as to the Ellis Parties' other claims.

This the 30th day of April, 2015.



Signed By:

*Amul R. Thapar*

**United States District Judge**

21